IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE ROANE,                          )
                                       )
          Movant/Defendant,            )
                                       )
     v.                                )          Civ. A. No. 10-778-GMS
                                       )          Cr. A. No. 07-48-GMS
                                       )
UNITED STATES OF AMERICA,              )
                                       )
          Respondent/Plaintiff.        )

**MEMORANDUM OPINION**

_____

Tyrone Roane. *Pro se* movant.

Shannon Thee Hanson. Assistant United States Attorney, United States Department of Justice,
Wilmington, Delaware. Attorney for respondent.

_____

$S_{ept}$ 17 , 2013
Wilmington, Delaware



SLEET, Chief Judge

## I. INTRODUCTION

Movant Tyrone Roane ("Roane") filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 61; D.I. 70) The government filed its answer in opposition. (D.I. 72) For the reasons discussed, the court will deny Roane's § 2255 motion without holding an evidentiary hearing.

## II. BACKGROUND

The following facts were established during Roane's trial and pre-trial suppression hearing in this court. On March 27, 2007, a "reliable source" informed a Wilmington police officer assigned to the Community Policing Unit, Officer Brian Witte, that a black male wearing a black and white jacket was observed conducting a drug transaction at or near 2201 North Pine Street, Wilmington, Delaware. Officer Witte relayed this information to two other officers assigned to the Community Policing Unit, Officers Shawn Gordon and Kurt Bryson, who responded to the location at approximately 2:00 p.m. Officers Gordon and Bryson drove through the area in a marked vehicle and observed a black male matching the description given by the informant at the residence. Officer Bryson observed the person meeting the description sitting on the steps of the residence. Officer Bryson testified that the person looked toward him and Officer Gordon in their marked police vehicle, and then walked into the house.

After observing the person, later identified as Roane, the three officers met at 23rd and Jessup Streets to set up a plan to approach him. The plan called for the officers to go eastbound on 22nd Street, against the flow of traffic; Officer Witte would stop his vehicle at the rear of the residence, and Officers Gordon and Bryson would continue to go onto Pine Street to the front of

1

the house where they had previously observed Roane. According to Officer Bryson, Offier Witte wanted him to speak to Roane and tell him to stop. With their plan set, the officers drove up 22nd Street, with Officers Gordon and Bryson in front, and Officer Witte behind them. As they got closer to the house, Officer Witte pulled over and exited his vehicle to maintain a visual on the back of the house. Officers Gordon and Bryson then drove around to the front of the house and observed Roane sitting on the steps next to a female. Officer Bryson had his window open, and called out to Roane, "Hey, come here." Roane looked in Officer Bryson's direction, and immediately jumped up and ran up onto the porch. Officer Bryson continued to tell Roane to stop when he got onto the porch, but Roane continued to move toward the door of the house. Officer Bryson then began to exit his vehicle and start heading towards Roane, who opened up the front door and went into the house.

Officers Gordon and Bryson ran up the steps, but Roane had gone into the house and locked the door by the time the officers reached it. Officer Bryson unsuccessfully attempted to kick the door open. Officer Gordon then successfully kicked the door open, and the two officers entered the residence, with Officer Gordon on the left and Officer Bryson on the right. Officer Bryson observed an open living room, a set of steps that would go up to the second floor of the house, and an opening to the left, which would go to the back of the house, or the rooms behind the living room.

Both officers drew their guns for protection and moved through the house, Officer Bryson toward the steps and Officer Gordon to the left toward the back of the house. When Officer Bryson got to the bottom of the steps, Officer Gordon, who was already in another room, yelled "He's here. He's over here."

2

In response, Officer Bryson began to move around the steps when he heard the "pop" from a taser. He continued moving toward the back of the house and observed Officer Gordon standing right outside the back door, holding a taser. The taser's wires, which were outside of the residence, extended over the fence. Officer Bryson observed Roane lying on the ground with Officer Witte close by. He then turned around to go out the front door and around the front of the house to assist Officer Witte.

During the period of time that Officers Gordon and Bryson made their observations at the front of the house, Officer Witte was positioned at the rear of the house. Officer Witte could see through the residence's six-foot, wooden privacy fence, and observed Roane run out of the back of the house. Officer Witte then ran on the outside of the fence, right alongside Roane, who looked directly at Witte, turned around, and ran back toward the house. According to Officer Witte, as Roane ran back toward the house, he ran up onto a pile of rocks in the yard and made a throwing motion. Officer Witte then observed two white objects and a black object, which he believed to be a handgun, being thrown in the northern direction toward the rear yard of 2203 North Pine Street.

After Roane threw the items over the fence, he began running again westbound toward the rear of the yard. Officer Witte ran along with Roane, until Roane ran back up the steps toward the rear door to the house. By that time, Officer Gordon had opened the rear door to the house. Roane attempted to dive over the fence, and Officer Gordon deployed his departmental taser. After being tasered, Roane landed on the sidewalk and started to jump up. In response, Witte tackled Roane to the ground, and ordered him to place his hands behind his back.

Roane refused, instead placing his hands underneath him, and Officer Witte punched him twice in the face with a closed fist. At this point, Roane put his hands behind his back and Officer Witte took him into custody without further incident. After Roane's arrest, Officer Witte went to the back yard of 2203 North Pine Street, where he found a black Ruger .22-caliber handgun and two bags of crack cocaine.

On April 3, 2007, the Grand Jury for the District of Delaware indicted Roane for possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A); and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 6; D.I. 7)

Roane's defense counsel filed a pre-trial motion to suppress physical evidence and statements. (D.I. 11) The court held an evidentiary hearing in connection with that motion on September 5, 2007. The government called Officers Witte and Bryson as witnesses. Roane called one witness, Jaylisa Robinson ("Robinson"), the daughter of the owner of the home located at 2201 North Pine Street, Wilmington, Delaware. (D.I. 18; D.I. 19) After considering the testimony elicited during the suppression hearing and the arguments presented in the parties' submissions on the issues, the court concluded that Roane did not have standing to raise a Fourth Amendment challenge. (D.I. 28) The court also concluded, in the alternative, that Roane was not seized for Fourth Amendment purposes until after he discarded the physical evidence. Therefore, the court denied Roane's motion to suppress. *Id.*

Roane's trial began on March 12, 2008 and, on that first day, security personnel informed counsel that jurors may have accidentally glimpsed Roane in handcuffs as he left the courtroom.

(D.I. 57 at 99-100) The defense immediately moved for a mistrial. *Id.* at 100. The court denied

the motion without prejudice to renew after the jurors were individually questioned. *Id.* at 104-

107. After the court conducted a *voir dire* of each juror, Roane's counsel renewed the motion for

mistrial, which the court denied. *Id.* at 132. The court provided preliminary instructions to the

jury, and the trial commenced. After three days of testimony, the jury deliberated and returned a

verdict of guilty on all three counts of the indictment. (D.I. 146; D.I. 147)

On September 10, 2008, the court sentenced Roane to 120 months of imprisonment,

followed by four years of supervised release. (D.I. 51) Roane appealed, and the Third Circuit

Court of Appeals affirmed his convictions and sentence. *See United States v. Roane*, 338 F.

App'x 127 (3d Cir. 2009).

## III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant

to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that

the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d

542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule

8(a), 28 U.S.C. foll. § 2255. The record conclusively demonstrates that Roane is not entitled to

relief under § 2255. Therefore, the court concludes that an evidentiary hearing is not warranted.

## IV. DISCUSSION

The court discerns four distinct grounds for relief in Roane's timely filed § 2255 motion.

First, Roane contends that trial counsel provided constitutionally ineffective assistance during the

suppression hearing by: (a) failing to argue that the police did not have probable cause to enter

2201 North Pine Street without a search warrant; (b) failing to argue that the evidence recovered

in the adjacent backyard was inadmissible because it was "fruit of the poisonous tree"; and (c) advising him not to take the stand during the suppression hearing. In claim two, Roane contends that trial counsel erred in advising him not to move for a mistrial after the jurors inadvertently saw him in handcuffs, and by failing to challenge the chain of custody of the drugs and currency found on his person, which he alleges was either missing or had been tampered with by the police. Claim three asserts that appellate counsel provided ineffective assistance by failing to set forth on appeal additional arguments regarding the suppression motion. And finally, claim four asserts that the court abused its discretion by denying his motion for mistrial in light of the jurors' apparent observations of him in handcuffs. The government contends that all grounds for relief should be denied as meritless.

## A. Claims One, Two, and Three: Ineffective Assistance of Counsel

Roane has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Roane must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688. Under the second *Strickland* prong, Roane must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffectiveness claim solely on the ground that the defendant

6

was not prejudiced. *Strickland,* 466 U.S. at 668. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* 689.

### 1. Claim One: Trial counsel improperly litigated Roane's pre-trial motion to suppress

Roane contends that his two defense attorneys erred by exclusively arguing that the officers lacked probable cause to arrest him. In his opinion, a more promising argument would have been that the police officers conducted an improper warrantless entry of 2201 North Pine Street. Roane also contends that counsel should have argued that the immobilization of his body caused by being tasered constituted an unreasonable seizure which, in turn, rendered the evidence retrieved from the dropped bag inadmissible because he dropped the bag **after** he was tasered and seized. And finally, Roane asserts that trial counsel erroneously advised him not to testify at the suppression hearing on the basis that any admissions that he might make on cross-examination could be used against him at trial. For the following reasons, the court concludes that these arguments are unavailing.

First, the record reveals that defense counsel actually raised the same Fourth Amendment argument regarding the warrantless entry into the Pine Street residence that Roane presently contends they failed to present. For instance, defense counsel filed a memorandum in support of Roane's suppression motion that explicitly asserts two grounds for suppression: (1) the officers lacked reasonable suspicion to stop the defendant because the tip regarding drug activity was unreliable and uncorroborated; and (2) the police officers unlawfully entered the residence without a warrant and Roane had standing to contest this Fourth Amendment violation. During the suppression hearing, counsel argued that Roane had a reasonable and legitimate expectation

7

of privacy in the residence and could therefore properly contest the officers' warrantless entery into the residence. Defense counsel supported this argument by presenting the testimony of Jaylisa Robinson, who testified that Roane routinely visited the residence, knew the owners, and had received permission from Jaylisa to enter the residence on the day of his arrest.

Considering that counsel raised the same improper warrantless entry argument presently advanced by Roane, Roane cannot successfully argue that counsel's performance fell below an objective standard of reasonableness. In turn, Roane cannot demonstrate that he was prejudiced by counsels' performance. Accordingly, the court will deny the first allegation of claim one as factually baseless.

Next, Roane contends that counsel should have argued that the evidence was dropped **after** Roane was tasered and, therefore, after he was seized. As such, counsel should have argued that the gun and drug evidence was inadmissible "fruit of the poisonous tree" because Roane did not "abandon" it prior to his improper seizure-by-tasering.

Although creative, this argument is unavailing. During the suppression hearing, Officer Witte testified that Roane stood on a pile of rocks and threw the bag of evidence into the neighbor's yard before he was tasered. (D.I. 18, at 13-16) In contrast, Roane's § 2255 motion provides two different yet equally unsupported stories about how the evidence ended up in the neighbor's yard after he was seized by the police. First, he alleges that the momentum caused by the taser propelled him into the fence, and the force of that impact caused the bag (containing the crack and gun) that he was carrying to land in the neighbor's yard. (D.I. 70-1 at 15) Second, he contends that the taser caused him to trip "which sent his black bag flying into the neighbor's

8

back yard." *Id.* at 32. Both of these versions are offered to support Roane's argument that he did not "abandon" the crack and gun prior to being seized by the police.

However, as the court explained when it denied Roane's suppression motion, after listening to the testimony of each witness (Officer Witte, Officer Bryson, and Jaylisa Robinson) and observing their demeanor, the court concluded that the witnesses' accounts of the facts were credible. Significantly, Officer Witte's testimony at trial was identical to his testimony during the suppression hearing, (D.I. 57; D.I. 58), and the two stories contained in Roane's § 2255 motion do not plausibly explain how the taser caused the bag "fly" over a fence that was at least six feet high. Thus, after viewing Roane's two unsupported and slightly dissimilar stories in context with both of Officer Witte's credible accounts, the court concludes that counsel reasonably refrained from relying on Roane's dubious description about how the bag ended up in the neighbor's yard as a basis for suppressing that evidence. Accordingly, the court concludes that the second allegation in claim one lacks merit.

Finally, the court rejects Roane's contention that defense counsel provided ineffective assistance when they advised him not to testify at the suppression hearing. As noted by the Supreme Court, a defendant's suppression hearing testimony can be used for impeachment purposes if he testifies to the contrary at trial. *See United States v. Salvucci*, 448 U.S. 83, 88 n.8 (1980). Also, a prosecutor may elicit information during cross-examination of a defendant during a suppression hearing that might be helpful to the prosecutor in developing its case or in deciding its trial strategy. *Id.* at 96. In this case, Roane's conclusory criticism regarding counsels' performance does not demonstrate that counsels' decision not to call him to testify at the suppression hearing was anything other than a tactical and strategic decision. In addition,

Roane does not explain how counsels' advice not to testify changed either the facts or law as found by this court when it denied his suppression motion. Thus, Roane has failed to demonstrate that counsel's performance was objectively unreasonable under *Strickland* or that he was prejudiced by counsel's actions.

Accordingly, the court will deny claim one in its entirety.

### 2. Claim Two: Trial counsel failed to move for a mistrial and to challenge chain of custody

In claim two, Roane contends that defense counsel erroneously advised him not to move for a mistrial when several jurors inadvertently saw him in handcuffs shortly before trial. Roane also alleges that counsel "failed to properly challenge the chain of custody of the drugs and money seized." (D.I. 70 at 6-9) Neither argument warrants relief.

First, even if counsel advised Roane not to move for a mistrial, the record clearly demonstrates that counsel actually did file a motion for a mistrial. Therefore, the court concludes that Roane's allegation concerning counsels' advice fails to satisfy either prong of the *Strickland* test.

Second, the record belies Roane's contention that counsel failed to properly challenge the chain of custody with respect to the drug and currency evidence introduced at trial. During the government's direct examination, Officer Witte testified that: (1) he saw money fall out of Roane's pocket when he fell to the ground after being tasered; (2) Officer Bryson collected that money; (3) the "evidence slip" that Officer Witte filled out was placed the evidence envelope and indicated that $447 had been recovered from Roane; and (4) two bags of crack were found in the back yard next to the back yard where Roane was captured, with one of the clear plastic bags containing four bags of crack. On cross-examination, defense counsel aggressively questioned

10

Officer Witte and the government's other witnesses with respect to the chain of custody and missing currency. For instance, defense counsel questioned Officer Witte about the discrepancy between his police report and his trial testimony, noting that the report only mentioned two plastic bags, whereas Witte testified that there were, in total, five plastic bags (one single bag of crack and one bag containing four bags of crack). In pursuing this line of questioning, defense counsel was able to elicit from Officer Witte the fact that the bags were "taped and torn and everything" at the time of trial. (D.I. 57 at 209) Although Officer Witte stated that he presumed the bags had been torn when the substance inside was tested, counsel's questions created a suggestion that bags may have been torn at some other time. *Id.* However, during closing arguments, defense counsel specifically suggested that the bag may have been torn by the dog in the neighbor's back yard, even before the police retrieved it as evidence, once again creating doubt about the chain of custody. (D.I. 59 at 103-04)

In turn, when the government was unable to produce the actual currency retrieved from Roane's person upon his arrest, defense counsel successfully objected to the admission of an evidence tag setting forth the exact amount of money found on Roane. As a result, Officer Witte was only allowed to testify as to his personal recollection of the quantity and denominations of the currency recovered. Again, during closing, defense counsel questioned the government's failure to produce the actual currency during the trial, stating, "We know that the money was not here for anybody to look at. Isn't that an important thing? Officer comes in and he is testifying about this denomination, that denomination. There is no report here in this evidence about that. Would you want to see the money? We would bring it to you, but we deposited it in the bank for safekeeping. [] Fairness 101. Police procedure 101. They have an evidence custodian and a

11

locker. What was important to the government's case was put in those lockers." (D.I. 59 at 76-77)

Next, when cross-examining the government's forensic chemist, defense counsel was able to elicit the information that the chemist did not personally receive the drug evidence from the officer listed in his report. Defense counsel reiterated this point during closing, again questioning the discrepancy in and reliability of the evidence. (D.I. 59 at 67)

After reviewing the record of defense counsels' aggressive cross-examination and thorough closing argument with respect to the chain of custody issues, the court concludes that Roane has failed demonstrate that counsels' performance fell below an objective standard of reasonableness. In turn, Roane has failed to demonstrate prejudice under *Strickland*, because he has failed to demonstrate a reasonable probability that a different strategy would have had a different result. Accordingly, the court will deny claim two for failing to satisfy *Strickland*.

### 3. Claim Three: Appellate counsel failed to properly challenge the issues in Roane's direct appeal

In claim three, Roane contends that the two attorneys who represented him during his direct appeal were ineffective because they failed to properly challenge the issues in his case. More specifically, he asserts that appellate counsel erred by merely reiterating the same suppression arguments set forth by trial counsel, despite the fact that appellate counsel had identified alternative theories they believed should have been raised during the suppression hearing.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Consequently, an attorney's decision about which issues to raise on appeal are generally

12

considered to be strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them." *United States v. Turner*, 677 F.3d 570, 577 (3d Cir. 2012)(internal citation omitted).

Here, Roane does not identify or even remotely outline the "alternative theories for suppression" appellate counsel allegedly described to him. (D.I. 70-1 at 44) He also does not demonstrate a reasonable probability that these alternative theories would have changed the result of his appeal. Thus, the court concludes that this conclusory and unsupported argument does not warrant relief.

## B. Claim Four: This Court Erred By Denying Roane's Motion For Mistrial

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence on the grounds that:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255. However, "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255." *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981). As a general

---

[1] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999)(counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

rule, absent an intervening change in the governing substantive law or other exceptional circumstances, movants pursuing relief under § 2255 are barred from re-litigating "questions which were raised and considered on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993); *see also Davis v. United States*, 417 U.S. 333, 342 (1974).

In his final claim, Roane contends that this court abused its discretion in denying his motion for mistrial after several jurors apparently saw him in handcuffs just prior to trial. This argument was heard and rejected by the Third Circuit during Roane's direct appeal, and Roane does not contend that an intervening change of law or an extraordinary circumstance has occurred since that litigation. Accordingly, the court will deny claim four as procedurally barred.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court is denying Roane's § 2255 motion after determining that his ineffective assistance of counsel allegations lack merit and his abuse of discretion claim is procedurally barred. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the court will not issue a certificate of appealability.

## VI.    CONCLUSION

The court concludes that Roane is not entitled to relief pursuant to 28 U.S.C. § 2255.   An

appropriate order will issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TYRONE ROANE,                          )
                                       )
          Movant/Defendant,            )
                                       )
     v.                                )        Civ. A. No. 10-27-GMS
                                       )        Cr. A. No. 06-50-GMS
                                       )
UNITED STATES OF AMERICA,              )
                                       )
          Respondent/Plaintiff.        )

**ORDER**

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS

HEREBY ORDERED that:

1. Movant Tyrone Roane's motion to vacate, set aside, or correct sentence pursuant to 28

U.S.C. § 2255 (D.I. 61; D.I. 70) is **DENIED.**

2. A certificate of appealability will not issue for failure to satisfy the standard set forth

in 28 U.S.C. § 2253(c)(2).

3. The clerk of the court is directed to close the case.

Sep 17          , 2013
Wilmington, Delaware                    CHIEF, UNITED STATES DISTRICT JUDGE